☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

In the Matter of the Search of                )
*(Briefly describe the property to be searched*      )
*or identify the person by name and address)*      )        Case No.    23-954M(NJ)
information to determine the location of the target cellular to devices      )
assigned to accounts with International Mobile Subscriber Identity (IMSI)      )
310240242811173 and IMSI 310240320468490 referred to in this affidavit      )
as the "Target Account 1" and "Target Account 2", respectively. The service      )
provider for Target Accounts 1 and 2 is T-Mobile.      )

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure
of the following person or property located in the _____Eastern_____ District of _____Wisconsin_____
*(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property
described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

Please see Attachment B.

**YOU ARE COMMANDED** to execute this warrant on or before _____7/28/2023_____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.   ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the
person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the
property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory
as required by law and promptly return this warrant and inventory to _____Honorable Nancy Joseph_____ .
*(United States Magistrate Judge)*

☑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C.
§ 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose
property, will be searched or seized *(check the appropriate box)*

☑ for __30__ days *(not to exceed 30)*   ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:     7/14/2023 @ 1:33 p.m.          *(signature)*
                                                    *Judge's signature*

City and state:     Milwaukee, WI          Honorable Nancy Joseph, U.S. Magistrate Judge
                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

**Certification**

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

**ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular devices assigned to accounts with International Mobile Subscriber Identity (IMSI) **310240242811173** and IMSI **310240320468490**, whose service provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: the unknown suspects are the persons to whom the pen register or trap and trace device are to be attached/applied and who are the subjects of the criminal investigation; International Mobile Subscriber Identity (IMSI) **310240242811173** and IMSI **310240320468490** are assigned to the target devices; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Use of a Firearm during Crimes of Violence are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

## ATTACHMENT B

### Particular Things to Be Seized
### with a Cell Site Simulator or Wi-Fi Geolocation Device

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular devices by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

1

In order to connect with the Target Accounts, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Accounts, and law enforcement will limit collection of information from devices other than the Target Accounts. To the extent that any information from a cellular device other than the Target Accounts is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Accounts from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Accounts; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Accounts; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Accounts.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2)

2

**Particular Things to Be Seized from Device Service Provider**

1.      Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.      All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.      Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from

1

**May 15, 2023 to present** pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.     To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.     This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.     The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.     This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).

2

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| information to determine the location of the target cellular to devices assigned to accounts with International Mobile Subscriber Identity (IMSI) 310240242611173 and IMSI 310240320468490 referred to in this affidavit as the "Target Account 1" and "Target Account 2", respectively. The service provider for Target Accounts 1 and 2 is T-Mobile. | ) ) ) |

Case No. 23-954M(NJ)

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Please see Attachment A.

located in the          Eastern          District of          Wisconsin          , there is now concealed *(identify the person or describe the property to be seized)*:

Please see Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 1951(a) | Hobbs Act Robbery |
| 18 U.S.C. § 924(c) | Brandishing a Firearm during a Crime of Violence |

The application is based on these facts:

Please see attached Affidavit.

☑ Continued on the attached sheet.

☑ Delayed notice of   thirty   days *(give exact ending date if more than 30 days:*       *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

7/14/23  9:19am

*Applicant's signature*

Caleb Porter, Task Force Officer, FBI

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
TELEPHONE          *(specify reliable electronic means).*

Date:   7/14/2023

*Judge's signature*

City and state:   Milwaukee, WI          Honorable Nancy Joseph, U.S. Magistrate Judge

*Printed name and title*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEARCH WARRANT**

I, Detective Caleb Porter, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND BACKGROUND**

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c) to authorize law enforcement to employ electronic investigative techniques, as described in the following attachment, to determine the location of the target cellular devices assigned to accounts with International Mobile Subscriber Identity (IMSI) **310240242811173** and IMSI **310240320468490** referred to in this affidavit as the "Target Account 1" and "Target Account 2", respectively. The service provider for Target Accounts 1 and 2 is T-Mobile. This affidavit is made in support of up to two different search warrants to locate the phone: 1) by obtaining information from the service provider, e.g., cell site and other precision location information and/or 2) by utilizing a device that acts as a cell phone tower sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device. In addition, because this request may be construed as a Pen Register / Trap and Trace device or request, the application for this warrant (which includes this affidavit) is intended to comply with 18 U.S.C. § 3122.

2. Under Federal Rule of Criminal Procedure 41, a magistrate judge having authority in any district where activities related to the crime may have occurred, may issue a warrant for property that is located outside the jurisdiction of any state or district.

3. I am a Task Force Officer with the Federal Bureau of Investigation (FBI) and have been since October of 2021. I am also a police Detective with the West Allis Police Department and have been a sworn law enforcement officer for over 19 years. I have been assigned to the

1

FBI's Milwaukee Area Violent Crimes Task Force, a multi-jurisdictional law enforcement entity charged with investigating violations of federal law, including bank robberies, commercial robberies, armed motor vehicle robberies, and other violent crime matters, as defined under Title 18 of the United States Code, I have been trained in a variety of investigative and legal matters, including the topics of Fourth Amendment searches, the drafting of search warrant affidavits, and probable cause. I have participated in criminal investigations, surveillance, search warrants, interviews, and debriefs of arrested subjects. As a result of this training and investigative experience, I have learned how and why violent actors typically conduct various aspects of their criminal activities. I have experience in the investigation, apprehension and prosecution of individuals involved in federal criminal offenses, the use of cellular devices to commit those offenses and the available technology that can be used by law enforcement to assist in identifying the users of cellular devices and their location.

4.     The facts in this affidavit come from my personal observations, training, experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5.     Based on the facts set forth in this affidavit, there is probable cause to believe that the unknown suspects are using the Target Accounts and did so during multiple robberies. I know from training and experience that cell phone users normally have their cellular telephones with them, so locating a user's cell phone will show that user's location. I believe that locating the Target Accounts will constitute and lead to evidence of federal offenses, Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Brandishing of a Firearm during a Crime of

2

Violence committed by the unknown suspects . Accordingly, the unknown suspects is "person to be arrested" within the meaning of Federal Rule of Criminal Procedure 41(c)(4).]

## PROBABLE CAUSE

6.      The United States is investigating multiple crimes including Hobbs Act Robbery and use of a firearm during crimes of violence, involving possible violations of Title 18, U.S.C. §§ 1951(a) and 924(c). The multiple robberies involve at least two unknown suspects.

**Below is a brief synopsis of the involved cases and does not include all known facts related to this investigation:**

7.      On June 21, 2023, at about 11:14 a.m. (CST), a masked suspect robbed the Walgreens pharmacy, located at 2727 W North Avenue, in the City of Milwaukee, which is located in the Eastern District of Wisconsin. The robbery affected interstate and foreign commerce. Your affiant reviewed Milwaukee Police Department ("MPD") report incident no. 23-172-0105 and learned that shortly before the robbery the suspect exited the front passenger seat of a gray/silver Chevy Malibu with no license plates displayed.

8.      The suspect was described as a black male around 6'00" tall with a slim build wearing a white jean vest over a white t-shirt, white jean shorts, red shoes, a gray "Pooh Shiesty" mask and gold rimmed sunglasses. Affiant is aware through training and experience that a "Pooh Shiesty" mask is a ski-mask type garment that covers the head, lower portion of a person's nose and the mouth similar to a ski mask.

9.      The suspect walked directly to the pharmacy and produced a handgun and bag before demanding oxycodone. The suspect obtained two bottles of oxycodone and another bottle of an unknown medication and fled the store. The suspect vehicle was last seen east on West North Avenue and never located.

3

10.     On June 23, 2023, at about 8:44 am (CST), the Walgreens at 7171 North Teutonia Ave in Milwaukee was robbed at gunpoint.  This business is located in the Eastern District of Wisconsin.  The robbery affected interstate and foreign commerce.

11.     Affiant reviewed MPD report no. 23-174-0044 and learned a masked suspect entered the store and approached the pharmacy counter.  The suspect was described as a black male, approximately 5'08" tall, 150 lbs wearing a purple sweatshirt, gray "ski mask" and armed with a black handgun.  The suspect produced a black plastic bag with his left hand and a black handgun with his right hand before demanding "oxy".

12.     The suspect was provided with a test bottle of oxycodone, which reportedly only had four pills inside.  The suspect then fled the store and was not located.

13.     On June 23, 2023, at about 9:10 a.m. (CST), another Walgreens pharmacy was robbed.  This business was located at 2625 West National Ave, in Milwaukee.  This is in the Eastern District of Wisconsin.

14.     I reviewed MPD report incident no. 23-174-0050 and found that the suspect was described as a black male with dark complexion, between 20-30 years old, 6'00"-6'03" tall, slim build, wearing a gray "ski mask", purple hoodie with red/burgundy paint splatter, black jeans and white shoes.  Based upon a comparison of the still images from the robberies on June 23, 2023, I believe that the suspect to the same person in both robberies, based upon the similar clothing and other physical characteristics.  In addition, the modus operandi of the robberies was similar.

15.     When the suspect entered Walgreens, he walked directly to the pharmacy counter. The suspect produced a black plastic bag with his left hand and a black handgun with his right hand before demanding oxycodone.  The suspect told the pharmacy technician that she had ten

4

seconds to put the drugs in the bag. The pharmacist placed the pills in the bag and the suspect fled the scene.

16.     Affiant reviewed still images from all three aforementioned Walgreens robberies. Based on these images and the similarities between all incidents, your affiant believes they were perpetrated by the same suspect.

17.     On July 3, 2023, Detective Martin Keck, of the Wauwatosa Police Department and fellow MAVCTF member, advised your affiant of another Walgreens pharmacy robbery that occurred in Wauwatosa on June 29, 2023. This Walgreens is located at 2656 North Wauwatosa Avenue, in Wauwatosa, which is located in the Eastern District of Wisconsin.

18.     On June 29, 2023, at approximately 9:35 p.m. (CST), two suspects entered the store through the main entrance and proceeded to the pharmacy area. During the incident, both suspects jumped over the pharmacy counter. One of the suspects told the pharmacist, "I only want the Oxys." The suspects obtained hundreds of units of Oxycodone from the pharmacy. The suspects fled out the main entrance/exit door of Walgreens at 9:37 p.m.

19.     Detective Keck reviewed video footage of the robbery and determined that one of the suspects was wearing a purple sweatshirt that appeared consisted with the sweatshirt worn by the suspect from the two Walgreens robberies on June 23, 2023.

20.     A previously issued federal search warrant from the Eastern District of Wisconsin was authorized for a Timing Advance Area Search for the four incidents mentioned above. As previously noted, the incidents happened across three different dates across various parts of the city including both Milwaukee and Wauwatosa. The results from the area search were analyzed and across the thousands of lines of data, the IMSI **310240242811173** (Target Account 1) was identified as the only IMSI that was in the area of all four robbery locations. Additionally, IMSI

5

**310240320468490** (Target Account 2) was identified as the only IMSI that was in the area of three robbery locations, specifically locations 2 through 4. Furthermore, the timing advance records analyzed show records consistent for the area of each of the incident locations around the reported times.

21.     Your affiant is aware that there are multiple individuals involved based on surveillance from robberies 1 and 4. Affiant is also aware that different vehicles are being used in these incidents. In robbery 1 a tan or silver Chevy Malibu was used. In robberies 2 and 3 a black Kia Optima was used. A vehicle has not yet been determined for robbery 4.

22.     Based on the above information, including that only two IMSIs matched three to four incidents (depending on the IMSI) out of thousands of lines of data and unique identifiers, there were at least two individuals involved and at least two different vehicles, that there is probable cause that the Target Accounts are associated with the incidents and that the information requested will lead to the identity of the individuals utilizing the cellular devices. Additionally, other co-actors and locations of evidence related to this investigation may be discovered.

23.     It is common for cell phones to be used in robbery incidents, often between co-actors or to otherwise assist in the facilitation of the crime(s). In this instance, there are multiple different locations separated by sufficient time and distance that can be associated with the suspects in the above-described incidents. If common phone numbers can be developed between multiple incidents, this could lead to the identification of one or more of the suspects.

24.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

6

25.     Based on the analysis conducted and the parameters applied to the identifiers, which resulted in the initial identification of the target device out of thousands of lines of data who had records in multiple areas across multiple days consistent with the facts of the investigation, that there is probable cause to believe that the historical and prospective information being requested will provide evidence of the aforementioned violations to include locating the user of the device and the actual device, as well as historical records to identify additional locations and activities of the subject currently unknown to investigators.

## AUTHORIZATION REQUEST & MANNER OF EXECUTION

26.     I request that the Court issue the proposed search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c) and 2711.

27.     Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or a "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), this application and the accompanying warrant are intended to comply with requirements set forth in 18 U.S.C. §§ 3122-3123.

28.     In my training and experience, I have learned that cellular phones and other cellular devices communicate wirelessly across a network of cellular infrastructure, including towers that route and connect individual communications. When sending or receiving a communication, a cellular device broadcasts certain signals to the cellular tower that is routing its communication. These signals include a cellular device's unique identifiers.

29.     In my training and experience, I have learned that T-Mobile is a company with its headquarters located within the United States and provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of cellular devices to which

7

they provide service. That information includes (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, (2) cell-site data, also known as "tower/face information" or cell tower/sector records, and (3) timing advance or engineering data commonly referred to as per call measurement data (RTT, Timing Advance, LOCDBOR, or equivalent). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.

30.     To facilitate execution of this warrant, law enforcement may use an investigative device or devices (sometimes referred to as a Cell Site Simulator or Wi-Fi geolocation device) capable of broadcasting signals that will be received by the Target Accounts or receiving signals from nearby cellular devices, including the Target Accounts. Such a device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell phone to communicate with others. The device may send a signal to the Target Accounts and thereby prompt it to send signals that include the unique identifier of the device. Law enforcement may monitor the signals broadcast by the Target Accountw and use that information to determine the Target Accounts' locations, even if it is located inside a house, apartment, or other building.

8

31.     The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices. In order to connect with the Target Accounts, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be the Target Accounts, and law enforcement will limit collection of information from devices other than the Target Accounts. To the extent that any information from a cellular device other than the Target Accounts are collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Accounts from all other cellular devices.

32.     I request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the target cellular device would seriously jeopardize the ongoing investigation. Such disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is a reasonable necessity for the use of the techniques described. *See* 18 U.S.C. § 3103a(b)(2). As further specified in the attachment, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined

9

in 18 U.S.C. § 2510) or any stored wire or electronic information, there is a reasonable necessity for that seizure. *See* 18 U.S.C. § 3103a(b)(2).

33. I further request the following information from the service provider: the installation and use of a pen register trap and trace device, all real-time precision location information, including E-911 Phase II data, GPS data, and latitude-longitude data, real time cell site information, and per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) beginning 30 days from the date the warrant is issued.

34. I further request call detail records and data reports (voice, SMS, MMS), including cell site location information, originating and destination IP addresses, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from April 15, 2023, to present.

35. I further request subscriber and extended subscriber information, handset identifiers, handset make and model, Wi-Fi MAC address, and account notes and memos for the target device.

36. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the target cellular device outside of daytime hours.

37. I further request that the pen register / trap and trace device be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Accounts; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Accounts; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Accounts.

38. I further request that the Court order all documents in support of this application, including the affidavit and search warrant, be sealed until further order by the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all of the

10

targets of the investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation. I further request that the Court order any service provider, or their representatives, not to disclose the existence of this warrant or investigation unless ordered to do so by the Court.

39.     A search warrant may not be legally necessary to authorize all of the investigative techniques described. Nevertheless, I submit this warrant application out of an abundance of caution.

## ATTACHMENT A

This warrant authorizes the use of the electronic investigative technique described in Attachment B to identify the location of the cellular devices assigned to accounts with International Mobile Subscriber Identity (IMSI) **310240242811173** and IMSI **310240320468490**, whose service provider is T-Mobile.

This Warrant also serves as a Pen Register order under 18 U.S.C. § 3123. The Court makes the following findings: the unknown suspects are the persons to whom the pen register or trap and trace device are to be attached/applied and who are the subjects of the criminal investigation; International Mobile Subscriber Identity (IMSI) **310240242811173** and IMSI **310240320468490** are assigned to the target devices; and Title 18 U.S.C. § 1951(a), Hobbs Act Robbery, and Title 18 U.S.C. § 924(c), Use of a Firearm during Crimes of Violence are the offenses, to which information relates; and

The attorney for the government has certified to this Court that the information likely to be obtained by the installation and use of the pen register or trap and trace device is relevant to an ongoing criminal investigation by the Federal Bureau of Investigation.

12

**Particular Things to Be Seized**
**with a Cell Site Simulator or Wi-Fi Geolocation Device**

This Warrant authorizes the officers to whom it is directed to determine the location of the target cellular devices by collecting and examining:

1. radio signals emitted by the target cellular device for the purpose of communicating with cellular infrastructure, including towers that route and connect individual communications; and

2. radio signals emitted by the target cellular device in response to signals sent to it by the officers;

for a period of thirty (30) days, during all times of day and night. This includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. § 3123 by the Federal Bureau of Investigation. Because the use of the device, a Cell Site Simulator or Wi-Fi geolocation device, may fall within the definitions of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41. The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

This warrant does not authorize the interception of any content (telephone, text message, or internet based). The investigative device may interrupt cellular service of phones or other cellular devices within its immediate vicinity. Any service disruption to non-target devices will be brief and temporary, and all operations will attempt to limit the interference with such devices.

In order to connect with the Target Accounts, the device may briefly exchange signals with all phones or other cellular devices in its vicinity. These signals may include cell phone identifiers. The device will not complete a connection with cellular devices determined not to be any of the Target Accounts, and law enforcement will limit collection of information from devices other than the Target Accounts. To the extent that any information from a cellular device other than the Target Accounts is collected by the law enforcement device, law enforcement will delete that information, and law enforcement will make no investigative use of it absent further order of the court, other than distinguishing the Target Accounts from all other cellular devices.

Under this warrant, the cell site simulator / geolocation device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Accounts; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Accounts; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Accounts.

The Court finds reasonable necessity for use of the techniques and collection of information described. *See* 18 U.S.C. § 3103a(b)(2).

This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the information described. *See* 18 U.S.C. § 3103a(b)(2)

2

**Particular Things to Be Seized from Device Service Provider**

1.        Information about the target cell phone and its location, later referred to collectively as location information, includes all precision location information, E-911 Phase II data, GPS data, latitude-longitude data, per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent), and real time cell site information for 30 days beginning from the date the warrant was issued.  This includes initiating a signal to determine the location of the target cell phone on the service provider's network or with such other reference points as may be reasonably available and at such intervals and times directed by the government. The information includes monitoring non-content signaling and routing information, including all non-content packet switched data, through the furnishing of information, facilities, technical assistance, and the installation and use of a pen register and trap and trace device pursuant to 18 U.S.C. §§ 3123-3124 by the service provider and the Federal Bureau of Investigation. Because the request for such location data may include use of a "pen register" or a "trap and trace device," see 18 U.S.C. § 3127(3) & (4), the application and the warrant are designed to comply with the Pen Register Statute as well as Rule 41.  The application therefore includes all information required for and serves as a pen register application, 18 U.S.C. § 3123(a); similarly, the warrant therefore includes all the information required for and serves as a pen register order, 18 U.S.C. § 3123(b).

2.        All subscriber and extended subscriber information, handset identifiers, handset make and model, WI-FI MAC address, and account notes and memos pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

3.        Call detail records and data reports with cell site location information for voice, SMS, MMS, and data connections, originating and destination IP addresses, and per call measurement or timing advance data (RTT, Timing Advance, LOCDBOR, or equivalent) from

1

**May 15, 2023 to present** pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. §2703(c).

4.      To the extent that the information described is within the possession, custody, or control of the service provider, the service provider is required to disclose all location information to the government and provide all technical assistance necessary to accomplish the collection of the location information unobtrusively and with as little interference as possible.

5.      This pen register / trap and trace device shall be transferable to any changed dialed number subsequently assigned to a device bearing the same ESN, IMSI, or SIM as the Target Cellular Device; any changed ESN, IMSI, or SIM subsequently assigned the same dialed number as the Target Cellular Device; or any additional changed dialed number, ESN, IMSI, or SIM listed to the same subscriber account as the Target Cellular Device.

6.      The government shall compensate the service provider for reasonable expenses incurred in furnishing such facilities or assistance. Any service provider or representative who gains access to the information in this warrant shall not disclose the existence of the warrant, order, or investigation to any third party unless ordered to do so by the Court. Additionally, the agency requests that all court orders and supporting documents, including the affidavit and search warrant, be sealed until further order by the Court.

7.      This warrant does not authorize the seizure of any tangible property.  In approving this warrant, the Court finds reasonable necessity for the seizure of the information described.  *See* 18 U.S.C. § 3103a(b)(2).